## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | |
|---|---|
| **DONNA YOWELL and REBECCA HALE,** ) | |
| ) | |
| ) | |
| *Plaintiffs*, ) | **Civil No. 3:23-cv-00321-TSL-MTP** |
| ) | |
| **v.** ) | |
| ) | |
| ) | |
| **THE BOARD OF SUPERVISORS OF HINDS COUNTY, MISSISSIPPI; DAVID L. ARCHIE, SUPERVISOR FOR DISTRICT 2 HINDS COUNTY, MISSISSIPPI; UNKNOWN SHERRIF'S DEPUTIES AND CONSTABLES OF HINDS COUNTY, MISSISSIPPI,** ) ) ) ) ) ) ) ) | |
| ) | |
| *Defendants.* ) | |
| ) | |
| _____ ) | |

---

### SECOND AMENDED COMPLAINT

### JURY TRIAL DEMANDED

---

### NATURE OF THE CASE

1.      This action is brought pursuant to 42 U.S.C. § 1983, the U.S. Constitution, and the laws of the State of Mississippi, including the Mississippi Tort

1

Claims Act, Miss. Code § 11-46-1 et seq. This is a civil action for violation of the plaintiffs' civil rights and for multiple torts arising under Mississippi state law. This dispute arose because neighbors adjoining plaintiff Yowell's farmland located at 1041 Frank Hall Road, Bolton, Mississippi have somehow gained the favor of defendant Archie, a member of the Hinds County Board of Supervisors. Defendant Archie, with the aid of the other named defendants, have been harassing the plaintiffs in the attempt to enforce a fraudulent easement upon plaintiff Yowell's property, an easement that the slightest bit of competent research would have revealed is not contiguous with plaintiff Yowell's property at all. A suit to quiet land title has been filed in the Chancery County of Hinds County, Mississippi, Civil No. 25CH2:23-cv-41. But whether the easement is ultimately ruled valid is beside the point. Defendants have shown such favoritism to the neighbors in pursuing this easement, and such egregious discrimination against the plaintiffs, that they have repeatedly violated the plaintiffs' right to Equal Protection under the law as guaranteed by the Fourteenth Amendment of the U.S. Constitution, and other civil rights guaranteed them by the U.S. Constitution.

JURISDICTION AND VENUE

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983. Also, the supplemental jurisdiction of this Court to hear tort claims arising under Mississippi state law is invoked pursuant to 28 U.S.C. §1367.

3.      Venue is appropriate under 28 U.S.C. §1391.

PLAINTIFFS

4.      Plaintiff Donna Yowell is an adult resident of the State of Mississippi.
She is the executive director of Mississippi Forest Urban Council, LLC, that owns a
6.44 acres tract of farmland located at 1041 Frank Hall Road, Bolton, Mississippi.
A copy of the recorded deed to said property describing it more fully is attached as
Exhibit 1. Plaintiff Yowell is suing both as a representative of her corporation and
for wrongs against her personally.

5.      Plaintiff Rebecca Hale is an adult resident of the State of Mississippi.
At all times relevant, she was employed at plaintiff Yowell's farm and resided there.

DEFENDANTS

6.      Defendant Board of Supervisors of Hinds County, Mississippi is the
governing body of Hinds County. The process server is directed to serve this
complaint upon President Vern O. Gavin or his duly appointed agent at the office of
the Hinds County Board of Supervisors, 316 South President Street, Jackson,
Mississippi 39201.

7.      Defendant David L. Archie is the Supervisor for District 2 of Hinds
County, Mississippi.  The process server is directed to serve this complaint upon him
or his duly appointed agent at the office of the Hinds County Board of Supervisors,
316 South President Street, Jackson, Mississippi 39201.

8.     The defendants named as "Unknown Sheriff's Deputies and Constables of Hinds County, Mississippi" are described by their actions and photographs in paragraphs 14, 15, 17, 21, 23, and 24 below. Upon information and belief, plaintiffs expect the identities of these defendants will become known during discovery, like the precedent setting case of *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). The process server is directed to serve this complaint upon the currently unknown defendants by way of serving Tyree D. Jones, Sheriff of Hinds County, Mississippi, or his duly appointed agent at the office of the Hinds County Sherriff, 407 East Pascagoula Street, Jackson, Mississippi 39201.

9.     At various times described in this complaint, the defendants acted jointly with one another to deprive the plaintiffs of their rights protected by the federal and state constitutions. In so doing, they acted under color of law.

10.     Hinds County is a subdivision of the government of the State of Mississippi. At various times described in this complaint, the defendants acted jointly with one another to commit torts against the plaintiffs. All defendants are liable. Under the Mississippi Tort Claims Act, Miss. Code § 11-46-1 et seq., Hinds County is liable for the tortious actions of the defendants.

## FACTUAL ALLEGATIONS

11.     Plaintiff Yowell's farm, Mississippi Urban Forest Council, LLC, is a teaching farm under contract with the U.S. Department of Agriculture. Plaintiff

grows exotic flowers and ornamental trees on this farm with the goal of teaching other prospective farmers how to do the same. There are over 15,000 students in this program. Importantly, plaintiff Yowell's flowers and ornamental trees are fragile and must be kept safe from roaming livestock or they could be ruined, costing her tens of thousands of dollars and possibly her livelihood. The photographs below and throughout this petition were taken by iPhones and by motion sensitive cameras set up on plaintiff Yowell's property. Words are helpful to the Court in understanding the plaintiffs' injury, but a picture is worth 1,000 words.





12.     Plaintiff Yowell bought the land on or about January 2018, and she

began operation of her teaching farm on or about August 2020. Almost from the very

beginning, she had problems with her neighbors, the Grays. They have ridden horses

upon her property at night, cut trees on her property at night, and they continue to

allow their cattle to roam on her property unabated, on one occasion even disrupting

an ongoing class. The neighbors' cows are a constant source of aggravation and

worry because it would only take one cow to breech the hothouse and destroy the

farm's entire crop of flowers.

13.     The Grays have their own driveway about 100 yards East of plaintiff Yowell's farm, but they stopped using it about nine months ago because their landlord stopped maintaining it and it washed out. Plaintiff Yowell offered to repair that driveway at her own expense, but the Grays declined and instead decided to become trespassers. They cut across their pasture and started using plaintiff Yowell's driveway. In opening access to this driveway, the Grays allowed their livestock to roam more freely onto plaintiff Yowell's property than ever before.





14.     Roughly nine months ago, plaintiff Yowell called the Hinds County Sheriff's office and tried to file a trespassing complaint against the Grays for using her driveway without permission. She was told that a lawsuit over an easement had been filed and that the Sheriff's office would not intervene while a lawsuit was pending. This turned out to be a complete fabrication. Plaintiff Yowell patiently waited to receive summons for a lawsuit, but none came because no lawsuit was ever filed. Nor would any such lawsuit ever have been filed, at least by a competent attorney, for such a lawsuit would have been frivolous. Two title searches were performed upon plaintiff Yowell's farmland: one shortly before she contracted with the USDA to become a teaching farm in March of 2022 by her attorney Greg Gidden, Esq., and another in March of 2023 by Charles Davis of Davis Land Surveying & Engineering of Raymond, Mississippi who performed a survey, see Exhibit 2. Both title searches confirmed that plaintiff Yowell's property has no easements or incumbrances upon it. Moreover, title to the easement by way of adverse possession is not in issue. According to Miss. Code § 15–1–13 (2023) adverse possession generally vests in any person claiming to be the owner after ten (10) years, but the ten years of adverse possession must be *continuous*. As noted in paragraph 13 above, the Grays used their own driveway up until about nine months ago when their driveway washed out, and only then did they start using plaintiff Yowell's driveway.

The Grays have no legal claim of easement upon plaintiff Yowell's property whatsoever.

15.    In the attempt to keep the neighbors' livestock from roaming upon her property and destroying her crops, plaintiff Yowell tried numerous times to place a fence or gate across her driveway, one foot inside her property line. The second gate was never locked, one need only to have opened and closed it to gain access. Nonetheless, the Grays called Sheriff's deputies and defendant Archie, and together they removed the fences or gates no less than three times. Here is a photo plaintiff Hale took on or about February 22, 2023 of persons believed to be Mr. Gray, defendant Archie, and an unknown Hinds County Sheriff's deputy removing and destroying another one of plaintiff Yowell's gates and tearing it off its hinges, which of course had the predictable effect of allowing more of the neighbor's livestock to pour onto her property.



16.     Defendant Archie has repeatedly threatened to arrest plaintiff Yowell and her employees, harassing her son Taylor (who lives on a nearby property) if she did not stop trying to place a protective gate across her driveway. Given defendant Archie's notorious history of domestic abuse,[1] and violent and aggressive behavior towards fellow members of the Hind County Board of Supervisors,[2] plaintiff Yowell is understandably terrified that defendant Archie will act violently towards her and her son. She has been seeing a psychologist to cope with her fear and anxiety due to defendant Archie's ongoing pattern of harassment.

17.     Speaking of that pattern of harassment, on or about 12:20 PM of February 22, 2023, plaintiff Hale, then an employee and farmhand of plaintiff Yowell who lived at the property, was unlawfully arrested and intimidated, apparently at the behest of defendant Archie. Plaintiff Hale recorded a written statement of the incident shortly after it happened so her recollection would be fresh, see Exhibit 3. According to plaintiff Hale, a tall Black woman officer wearing a COVID–19 mask breached her front door and her bedroom door where she was

---

[1]   https://www.wlbt.com/2021/02/12/hinds-co-supervisor-arrested-domestic-violence-charge/.   Defendant Archie's wife Niya Hopkins filed a criminal affidavit against him based on an incident that occurred January 23, 2021. Video from that day shows Archie putting Hopkins' clothes on the side of the road. He also allegedly took several inner doors of their dwelling off the hinges because she refused to share a bedroom with him.

[2]   https://www.wlbt.com/2021/09/30/david-archie-faces-multiple-charges-after-arrest-during-meeting/. Video of this September 30, 2021 incident describes defendant Archie cursing, destroying public property, and intimidating Hinds County Board members. To get his violent rage under control, several police officers had to subdue him and carry him out in handcuffs.

having lunch, and, without knocking and without showing a warrant, compelled her to walk outside to the porch of the farmhouse. There she saw defendant Archie backed up by 8 to 10 people including several Hinds County officers, and several of the trespassing neighbors. Plaintiff Hale was then led around to the front door where defendant Archie introduced himself. He had taped documents to a front porch post and said that this was an easement that applied to plaintiff's property. He told plaintiff Hale to give these documents to "Donna" (plaintiff Donna Yowell), and to tell her not to put up any more gates across her driveway. Plaintiff Hale quit her job soon afterwards due to the traumatic stress of this incident. She was afraid that had she shown any resistance to this display of police intimidation and harassment that she could have been beaten up or killed for resisting arrest. According to plaintiff Hale, the photo on the next page was taken by her shortly after her false arrest. The photo shows four unknown Hinds County officers who participated in the arrest, all of whom appear to be armed, and the circled woman is the officer who compelled her to leave her bedroom.



18.     Upon learning of the February 22, 2023 incident, the undersigned plaintiff's counsel emailed a letter to Tony Gaylor, Esq., attorney for the Hinds County Board of Supervisors, informing him that I represent Ms. Yowell and that any and all future communication with my client should come through me in order to avoid any further breaches of the peace, see Exhibit 4. I informed Mr. Gaylor that I looked at the purported easement Mr. Archie forced upon Ms. Hale and that I doubted very much it applied to Ms. Yowell's property because it was the wrong address. I asked him to investigate this easement very carefully and, if he found it did not apply to Ms. Yowell's property, to please direct Mr. Archie and other Hinds County governmental officials to stop trying to enforce it. My request went ignored. The very next day the Grays—apparently emboldened by defendant Archie's display of paramilitary force and intimidation—brazenly erected a permanently grounded brick mailbox directly in front of plaintiff's private driveway.



19.     Plaintiff Yowell immediately forwarded PDF copies of this purported easement to Davis Land Surveying & Engineering of Raymond, Mississippi, see Exhibit 5. Within a day or two, they produced a digital drawing showing where this easement was located relative to her property, see Exhibit 6. It is not even close. No portion of this easement touches plaintiff Yowell's property, it falls well over 300 yards South of it. Note: although Charles Davis, of Davis Land Surveying & Engineering, performed an industry standard field survey upon plaintiff's property, he was unable to perform a field survey of this purported easement because he could not do so without trespassing upon another landowner. Mr. Davis can, however, demonstrate to the Court that this easement does not run anywhere near plaintiff Yowell's property by means of his expert testimony.

20.     Upon obtaining a digital copy of the Charles Davis map showing defendant Archie's bogus easement was in fact bogus, the undersigned plaintiff's counsel forwarded a copy to Tony Gaylor, Esq., attorney for the Hind County Board of Supervisors. I asked if Ms. Yowell could restore the gate across her driveway until we could resolve this matter as she was still having problems with the neighbors' cows roaming onto her property. Remarkably, Gaylor emailed me the next day that the Grays (the trespassing neighboring family) did not want the gate restored and that Hinds County Board of Supervisors would stand behind their decision, Exhibit 7. In fact, a recent Hinds County Board meeting agenda show that defendant Archie

has been trying to persuade the Board to gravel plaintiff's private driveway and designate it a public road, see Exhibit 8.[3] Defendant Archie seems hellbent on stealing plaintiff's property and ruining her farm by any and all illegal means at his disposal. **ADDENDUM:** I emailed attorney for the Board of Supervisors Tony Gaylor on Friday May 19, 2023 that I would commence litigation next Monday morning. Shockingly, at 9:00 AM that Monday morning plaintiff Yowell called to tell me that county workmen were paving her private driveway as we spoke, and that Hinds County Sheriff's cars were there in great force to compel the unwarranted paving, see photo next page. I informed my client to tell the workmen they were paving her paving her private driveway without permission, and one of her farmhands did as I instructed. I later emailed attorney Gaylor that if defendant Archie had wanted to use Hinds County funds and equipment to illegally pave a private driveway, it would have made a lot more sense to have paved the neighbors' driveway to the East of plaintiff Yowell's property. As mentioned in paragraph 13, the neighbors did not start trespassing upon plaintiff Yowell until their own driveway washed out and they refused her kind offer to pay to repair it. Pave that driveway six months ago and we would not be embroiled in this litigation.

---

[3] See item A. on page 2, the first item scheduled for discussion by defendant Archie. He scheduled the graveling of Jones Court for discussion with the Board on April 17, 2023. "Jones Court" is what defendant Archie is now calling the plaintiff's private driveway. The previous driveway that serviced the neighbors' property was named Thomas Cox Road. That road name has been removed from the Hinds County GPS maps of the area, apparently in an attempt to manipulate Jones Court into becoming a public access road.



21.    More information has come to light about the forced paving incident

that began Monday May 22, 2023. The cultivation of plaintiff Yowell's private

driveway as a public road is apparently still underway. On that Monday morning, Taylor Yowell, plaintiff Yowell's son, was told by one of the county workmen that they were there to "pave" a "public road." Although plaintiff Yowell's driveway is currently only graveled at this point, the graveling appears to be the first step in paving it. During a Temporary Restraining Order hearing scheduled Wednesday May 24, 2023 at the Hinds County Chancery Court building, in the chambers of the Honorable Judge Crystal Martin Wise, counsel for the Hinds County Board of Supervisors told the undersigned plaintiff's counsel that the cultivation of plaintiff Yowell's private driveway as a public road was being done pursuant to a "Board resolution"; that plaintiff Yowell's private driveway has "always" been a public road; that the property the neighboring Grays are occupying is "land locked"; and that it was necessary to secure access to the neighboring property for fire and safety reasons.

22.     First, plaintiff Yowell objects to any Board meetings held concerning her property without written notice to her attorney because undersigned counsel specifically instructed Tony Gaylor, Esq., attorney for the Hinds County Board of Supervisors, that all further communication regarding her property should come through me, Exhibit 4. Plaintiff Yowell alleges that any Board meetings concerning her property without written notice to her attorney violate her procedural and substantive due process rights and are illegal. Second, plaintiff Yowell asserts that

the other factual allegations made by counsel for the Board at the TRO hearing (that her driveway was always a public road, that the neighbors are land locked, and that a public road is necessary for fire and safety reasons) are highly disputable and in many cases demonstrably false.

23.     Plaintiffs' criticisms of the Board's assertions in paragraph 22 are based upon the following evidence.

a.     Here is a photograph of a "Private Driveway, No Trespassing" sign that, upon information and belief, was recently removed from plaintiff Yowell's driveway by one of the defendants. This photo was taken on or about June 15, 2021, and still shows the sign that was removed.



The removal of the sign implies that plaintiff Yowell's private driveway is now a public road accessible by the general public. This goes well beyond the bogus easement defendants have repeatedly tried to force upon plaintiff Yowell. It is one thing to force her to allow the neighbors access to her property, but the defendants have now doubled down on that error and are trying to force her to allow everyone onto her property.

      b.    The name "Jones Court," is apparently what the Hinds County Board started calling plaintiff Yowell's private driveway when they undertook to gravel or pave it without her knowledge or consent as shown in Exhibit 8. Plaintiff Yowell had no way of knowing that the Board began calling her driveway "Jones Court." She would not have known that Board hearings on "Jones Court" applied to her property even if the notice of the hearings had been nailed to her front door and sent by certified mail to her lawyer (neither of which happened, these hyperbolic hypotheticals are presented to make a point).

      c.    Upon information and belief, it appears that the Hinds County Board of Supervisors has been deliberately manipulating street names in order to cover up its wrongdoing. Note the two names "Jones Court" forking off from Frank Hall Road in the Hinds County CMPDD planning maps shown below. This photo was taken on or about May 28, 2023.



The Maps application by Apple shows that Thomas Cox Road, not Jones Court, forks off Frank Hall Road, and it shows no road extending through plaintiff Yowell's property at all. This is probably because the Apple maps are based upon older information. This Maps screenshot was taken on or about May 28, 2023.



Taylor Yowell has prepared this Google map with labels to show how the digital street names have recently been manipulated by defendants in their attempts make plaintiff Yowell's private driveway into a public road. This Google map was prepared on or about May 28, 2023.



This recent manipulation of digital street names will surely be borne out by physical, historical maps. Note this photograph below taken by Taylor Yowell shows that the street sign "Thomas Cox Road" currently marks a street that Hinds County is now naming "Jones Court" on its digital maps. This photo was taken in Taylor Yowell's driveway on or about May 26, 2023, and it shows Frank Hall Road running East and West.



d.      As to the claim that the neighbors are land locked: no, they really are not. Upon information and belief, plaintiffs believe that the neighbors have an access driveway on the Southern border of their property. And they also have the driveway mentioned in paragraph 13. It lies about 100 yards East of plaintiff Yowell's driveway, and it connects to Frank Hall Road. The side–by–side photos of this driveway were taken on or about July 2020 when the neighbors were still using it and on or about July 2022 when they had stopped using it.



Note that the driveway looks roughly as traversable in each photo, but it obviously has fallen into disrepair and grown up because the neighbors stopped using it. Plaintiff Yowell approached a road expert and asked what it would take to restore the road to good working condition. She was told it would take several loads of

gravel and cost about $3,000. She offered to repair the road for the neighbors at her own expense, but they refused and chose to trespass upon her property instead.

e.      Notably, the neighbors used the Northern driveway for receiving mail, putting out their garbage for collection, and for the children to meet the school bus. These side–by–side photos, taken on or about June 15, 2021, demonstrate that the driveway was then used for all three purposes.



These photographs are substantial proof that the neighbors were not adversely possessing plaintiff Yowell's drive during this time, hence they will be hard pressed to show continuous adverse possession over the last ten years.

f.      Google Earth satellite photos from 2020 show several roadbeds on the

neighbors' property that connected to this driveway, and none that connected from

plaintiff Yowell's property. This screenshot was taken on or about May 28, 2023.



The point is, if the Board of Hinds County's genuine concern was to give the

neighbors better fire and safety access as economically as possible, they should have

repaved *the neighbors' Northern driveway*—not try and create a wholly new and

fictitious road by fashioning one out of plaintiff Yowell's private driveway. In their

haste to cover up their wrongdoing with the bogus easement, the defendants have

heaped more wrongdoing upon wrongdoing.

24.     Prior to the forced paving incident, an incident at the farm occurred on

or about 9:00 PM on May 18, 2023. Plaintiff Yowell was spending the night in a

small cottage on the farm. Evidently plaintiff Yowell parked her golf car in her private driveway in such a manner that the neighbors thought it obstructed the easement privileges defendant Archie has wrongfully convinced them to believe they have. The undersigned plaintiff's counsel received a phone call from plaintiff Yowell saying that she heard the neighbors screaming and that Sheriff's deputies were knocking at her door. I instructed her not to answer the door to the police unless they produced a warrant. I did this because I had previously instructed Tony Gaylor, Esq., attorney for the Hinds County Board of Supervisors, that I wanted all further communication with my client to come through me in order to avoid future breaches of the peace, Exhibit 4. Ms. Yowell is nearly a 70 year–old woman. My concern is that she could be beaten up or killed for resisting arrest, which was also plaintiff Hale's concern during her unlawful arrest incident. Plaintiff Yowell's son Taylor soon arrived, pushed the golf cart out of the way, and the incident was resolved. Notably, he said that one the neighbors was clutching a handful of papers and said that the driveway was now a "public road." The next day, undersigned counsel emailed Tony Gaylor about this incident. I asked if he could confirm or deny whether defendant Archie and the Hinds County Board had taken steps to declare plaintiff Yowell's driveway a public road. He replied that he knew of no further action taken by the Board, Exhibit 9. Nonetheless, this incident showed the favoritism that defendant Archie and the other named defendants have shown the neighbors is still

running full throttle, despite my repeated pleading with attorney Gaylor to put a stop to this nonsense. Defendant Archie has been encouraging the Grays to believe they have easement rights, and that the Hind County Sheriff's office is completely on their side and will come swooping in to protect their easement rights whenever they call. Plaintiff Yowell reminds the Court that when she tried to call the Hinds County Sheriff's office to report the neighbors' trespassing they refused to book the complaint and would not lift a finger to help her.

25.     Plaintiffs point out that they never should have been forced to litigate this matter in order to bring the government's wrongdoing to the surface and stop their harassment. In the Hind County Chancery petition to quiet title, plaintiff Yowell does not name the neighboring Grays as party defendants in that lawsuit. Plaintiff instead names a Ms. Weathersby, the owner/landlord of the neighboring property as a party defendant. It highly likely that this owner/landlord has been wholly ignorant of the trespassing activities of her tenants and the wrongful support of that trespassing by defendant Archie and the other named Hinds County governmental defendants. This brings an important procedural issue into focus. According to Miss. Code § 11–17–29 (Rev. 2004), to  remove clouds on title for a piece of real property the claimant must either possess the property or the property must be unoccupied. See also *Dixon v. Parker*, 831 So. 2d 1202, 1204 (¶8) (Miss. Ct. App. 2002). Rental tenants do not have standing to bring a lawsuit to quiet title

in Mississippi (for an easement or otherwise) because they do not possess the title for the property on which they reside; the owner/landlord does. Disinterested Board of Supervisor members and county law enforcement officers *certainly* do not have standing. The point is, if defendant Archie had not tried to usurp the authority of the Chancery Court; had he not entertained an ex parte hearing with the Grays and then tried to enforce his own incompetent and illegal ruling through law enforcement officers who should have known better than to follow all his dictates; had he advised the Grays to ask their landlord to hire a competent lawyer; and if attorney for the Board of Supervisors Tony Gaylor had advised defendant Archie to cease and desist his illegal efforts to enforce this bogus easement, it would not have been necessary for plaintiff to hire an attorney and file this lawsuit. If at any point in this dispute a competent attorney had been approached in order to enforce the purported easement properly, by filing a complaint to quiet title with the Chancery Court as they should have, she or he would have researched the easement and found that it did not apply, and no attorney in their right mind would file a frivolous lawsuit. Then this attempted public road fiasco heaped malicious error upon error. The defendants have acted have so blindly in support of the trespassing neighbors, and they have discriminated against plaints so egregiously, that do not have the slightest clue how outrageously illegal their actions have been.

VIOLATIONS

COUNT ONE

26.     The Fourth Amendment of the United States Constitution states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Defendants have repeatedly violated the Fourth Amendment rights of both plaintiffs. Plaintiff Hale was falsely arrested without proper cause or warrant, and plaintiff Yowell's fences, gates, signs, and other attempts to protect her private property were repeatedly removed and destroyed without proper cause or warrant.

27.     The Fifth Amendment states in relevant part: "nor shall private property be taken for public use without just compensation." This language is known as the Takings Clause. The defendants' actions could potentially ruin plaintiff Yowell's farm as a teaching farm, which was her purpose for acquiring this land. If plaintiff Yowell loses her farm as a teaching farm, defendants are liable under the Takings Clause.

28.     The Fifth and Fourteenth Amendments contain identical language that has been called the Due Process Clause. It states: "[N]o person shall be deprived of life, liberty or property without due process of law." Defendants have repeatedly

denied Plaintiff Yowell her due process rights, both in the attempt to wrongfully claim her private driveway under a fraudulent easement, and in the attempt to wrongfully claim her private driveway as a public road in order to coverup the fraudulent easement.

29.     The Fourteenth Amendment of the U.S. Constitution states in relevant part: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." This language is known as the Equal Protection Clause. It mandates that state and local governments treat all similarly situated persons alike, and it broadly restricts offensive discrimination against any individual or group. Defendants have repeatedly violated the Equal Protection rights of both plaintiffs.

30.     Plaintiff argues that the violation of their equal rights should be judged with strict scrutiny, the highest level of scrutiny applied in civil rights lawsuits such as these. Strict scrutiny is applied to the government's disparate treatment based either on 1) the fact that plaintiffs belong to a suspect classification, or 2) the fact that the government has infringed on the exercise of plaintiffs' fundamental rights. Both are present in the case at bar. A prima facia case of racial discrimination is shown in that both plaintiffs are White; whereas defendant Archie, the entire Hinds County Board of Supervisors, all of the Hinds County Sheriff's deputies or constables that have been harassing plaintiffs, and the Grays (the neighboring trespassers) are all Black. Both plaintiffs are also women which presents a prima

fascia case of gender discrimination. Plaintiffs' fundamental rights are the rights to enjoy their private property and means of making a living without governmental interference, and the freedom from unlawful arrests and police harassment.

31.     Alternatively, plaintiffs argue that even if their claim is viewed as a "claim–of–one," the government's actions lack any rational basis. In fact, the leading precedent of a claim–of–one violation of Equal Protection was a case where a municipal government demanded a larger easement from one landowner than they did the others. See *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). The Equal Protection Clause demands that the government be neutral between competing landowners and not take unfair and arbitrary sides.

## COUNT TWO

32.     The torts the defendants have committed against plaintiffs are almost too many to list: fraudulent misrepresentation, trespass, trespass to chattels, conversion, destruction of private property, tortious interference with a business or contractual relationship, intentional infliction of emotional distress; these are just a handful of the torts that the facts of the case at bar will show. All defendants are liable. Hind County is liable for these torts under the Mississippi Tort Claims Act. To the extent the defendants have acted outside the scope of their employment, they are personally liable.

RELIEF

33.     Wherefore, the plaintiffs demand a trial by jury on all but the

Mississippi Tort Claims Act claim, for which they request a judge trial as required

by the Act, and upon a verdict in their favor, ask that compensatory damages be

assessed in an appropriate amount, as well as punitive damages for those claims for

which they are available by law, and that they be awarded costs, attorney's fees, and

all other relief to which they are entitled.


Respectfully Submitted, this the 30th day of May 2023.


/s/ Marvin Vining
MARVIN VINING

Marvin Vining, Esq.
MS Bar No. 8535
Lead counsel for plaintiffs


**MARVIN VINING**
Attorney at Law, LLC
P.O. Box 250
Monticello, MS 39654
Phone: 601–842–2589
marvinvining@mac.com

CERTIFICATE OF SERVICE

I, Marvin Vining, lead counsel for plaintiffs, certify that I have this date served a copy of the above and foregoing Second Amended Complaint to the following interested persons by way of the ECF electronic filing system and by courtesy emails. Note: attorneys Chambers, Gaylor, and Hall have physically entered their appearances in the Hinds County Chancery Court case and are expected to be the attorneys in this federal case. Regardless, all defendants will be served a copy of plaintiffs' Second (and hopefully last) Amended Complaint through a process server as soon as possible.

Honorable Tom S. Lee                   Judge assigned this case

Honorable Michael T. Parker            Magistrate assigned this case

Rayford G. Chambers, Esq.              Lead attorney for Hinds County
rchambers@cglawpartners.com            Board of Supervisors and for
                                       Supervisor David L. Archie

Tony Gaylor, Esq.                      Attorney for Hinds County
tgaylor@co.hinds.ms.us                 Board of Supervisors and for
                                       Supervisor David L. Archie

John Hall, Esq.                        Lead attorney for Sheriff Tyree
jhall@halllawgrp.com                   D. Jones and the defendants
                                       currently named as Unknown
                                       Sheriff's Deputies and
                                       Constables

This, the 30th day of May 2023.

                    /s/ Marvin Vining
                    MARVIN VINING

**MARVIN VINING**
Attorney at Law, LLC
P.O. Box 250
Monticello, MS 39654
Phone: 601–842–2589
marvinvining@mac.com