## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | | |
|---|---|---|
| **DONNA YOWELL and REBECCA HALE,** | ) | |
| | ) | |
| | ) | |
| *Plaintiffs*, | ) | **Civil No. 3:23-cv-00321-TSL-MTP** |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **THE BOARD OF SUPERVISORS OF HINDS COUNTY, MISSISSIPPI; DAVID L. ARCHIE, SUPERVISOR FOR DISTRICT 2 HINDS COUNTY, MISSISSIPPI; UNKNOWN SHERRIF'S DEPUTIES AND CONSTABLES OF HINDS COUNTY, MISSISSIPPI; CLIFFORD GRAY; MARY L. WEATHERSBY; WALTER F. HILL,** | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| *Defendants.* | ) | |
| _____ | | |

---

## PROPOSED THIRD AMENDED COMPLAINT

## JURY TRIAL DEMANDED

---

NATURE OF THE CASE

1.      This action is brought pursuant to 42 U.S.C. § 1983, the U.S. Constitution, and the property and tort laws of the State of Mississippi by way of supplemental jurisdiction. This dispute arose because neighbors adjoining plaintiff Yowell's farmland located at 1041 Frank Hall Road, Bolton, Mississippi have somehow gained the favor of defendant Archie, a member of the Hinds County Board of Supervisors. Defendant Archie, with the aid of the other named governmental defendants, have been harassing the plaintiffs in the attempt to enforce an illegitimate easement upon plaintiff Yowell's property, an easement that the slightest bit of competent legal research would have revealed is not contiguous with plaintiff Yowell's property at all. Upon learning that plaintiff Yowell had obtained an attorney and that litigation was about to commence, defendant Archie changed tactics and tried to wrongfully pursue an eminent domain upon plaintiff Yowell's property, essentially covering up his previous wrongdoing with more wrongdoing. The governmental defendants have acted jointly with one another to repeatedly violate the plaintiffs' civil rights as guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution. Additionally, the adjoining landowners and tenants have repeatedly violated plaintiffs' property rights and committed numerous torts. Plaintiff Yowell seeks to quiet land title for her property, and both plaintiffs seek compensation for numerous violations of their civil rights and tort damages.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983. Also, the supplemental jurisdiction of this Court to hear Mississippi property and tort claims is invoked pursuant to 28 U.S.C. §1367.

3.      Venue is appropriate under 28 U.S.C. §1391.

## PLAINTIFFS

4.      Plaintiff Donna Yowell is an adult resident of the State of Mississippi. She is the executive director of Mississippi Forest Urban Council, LLC, that owns a 6.44 acres tract of farmland located at 1041 Frank Hall Road, Bolton, Mississippi. A copy of the recorded deed to said property describing it more fully is attached as Exhibit 1. Plaintiff Yowell is suing both as a representative of her corporation and for wrongs against her personally.

5.      Plaintiff Rebecca Hale is an adult resident of the State of Mississippi. At all times relevant, she was employed at plaintiff Yowell's farm and resided there.

## DEFENDANTS

6.      Defendant Board of Supervisors of Hinds County, Mississippi is the governing body of Hinds County. The process server is directed to serve this complaint upon President Vern O. Gavin or his duly appointed agent at the office of the Hinds County Board of Supervisors, 316 South President Street, Jackson, Mississippi 39201.

7.      Defendant David L. Archie is the Supervisor for District 2 of Hinds County, Mississippi.  The process server is directed to serve this complaint upon him or his duly appointed agent at the office of the Hinds County Board of Supervisors, 316 South President Street, Jackson, Mississippi 39201.

8.      The defendants named as "Unknown Sheriff's Deputies and Constables of Hinds County, Mississippi" are described by their actions and photographs in paragraphs 16, 17, 19, 22, 23, 25, and 26 below. Upon information and belief, plaintiffs expect the identities of these defendants will become known during discovery, like the precedent setting case of *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). The process server is directed to serve this complaint upon the currently unknown defendants by way of serving Tyree D. Jones, Sheriff of Hinds County, Mississippi, or his duly appointed agent at the office of the Hinds County Sherriff, 407 East Pascagoula Street, Jackson, Mississippi 39201.

9.      Upon information and belief, defendant Clifford Gray is the responsible party for the neighbors who are continually trespassing upon plaintiff Yowell's property. He is currently using the U.S. postal address of 1325 Frank Hall Road, Bolton, Mississippi 39041. The Hinds County Sheriff's Office is directed to serve a copy of this complaint upon Clifford Gray or his duly appointed agent wherever in the state of Mississippi he may be found.

10.     Upon information and belief, defendant Mary L. Weathersby is the owner and landlord of the property upon which defendant Clifford Gray resides. The Hinds County online tax records as of this date show Mary L. Weathersby to be the owner in life estate of an 18.25 acre lot, tax parcel ID number 2967–442–8, located in Bolton, Mississippi. The Sheriff's Office of Hinds County is directed to serve this complaint upon Mary L. Weathersby or her duly appointed agent wherever in the State of Mississippi she may be found. And if Mary L. Weathersby is not the actual landowner of this 18.25 acre plot due to errors in the Hinds County tax rolls, the Sheriff's Office of Hinds County is asked to serve this complaint upon whomever is the actual landowner.

11.     Upon information and belief, defendant Walter F. Hill is the owner and landlord of the property upon which defendant Clifford Gray resides. The Hinds County online tax records as of this date show Walter F. Hill to be the owner in life estate of a 1.00 acre lot, tax parcel ID number 2967–442–9, located in Bolton, Mississippi. The Sheriff's Office of Hinds County is directed to serve this complaint upon Walter F. Hill or his  duly appointed agent wherever in the  State of Mississippi he may be found. And if Walter F. Hill is not the actual landowner of this 1.00 acre plot due to errors in the Hinds County tax rolls, the Sheriff's Office of Hinds County is asked to serve this complaint upon whomever is the actual landowner.

12.    At various times described in this complaint, the governmental defendants acted jointly with one another to deprive the plaintiffs of their rights protected by the U.S. Constitution. In so doing, they acted under color of law.

## FACTUAL ALLEGATIONS

13.    Plaintiff Yowell's farm, Mississippi Urban Forest Council, LLC, is a teaching farm under contract with the U.S. Department of Agriculture. Plaintiff grows exotic flowers and ornamental trees on this farm with the goal of teaching other prospective farmers how to do the same. There are over 15,000 students in this program. Importantly, plaintiff Yowell's flowers and ornamental trees are fragile and must be kept safe from roaming livestock or they could be ruined, costing her tens of thousands of dollars and possibly her livelihood. The photographs below and throughout this petition were taken by iPhones and by motion sensitive cameras set up on plaintiff Yowell's property. Words are  helpful to the Court in understanding the plaintiffs' injury, but a picture is worth 1,000 words.





14.     Plaintiff Yowell bought the land on or about January 2018, and she began operation of her teaching farm on or about August 2020. Almost from the very beginning, she had problems with her neighbors, the Grays. They have ridden horses upon her property at night, cut trees on her property at night, and they continue to allow their cattle to roam on her property unabated, on one occasion even disrupting an ongoing class. The neighbors' cows are a constant source of aggravation and worry because it would only take one cow to breech the hothouse and destroy the farm's entire crop of flowers.

15.     The Grays have their own driveway about 100 yards East of plaintiff Yowell's farm, but they stopped using it about nine months ago because their landlord stopped maintaining it and it washed out. Plaintiff Yowell offered to repair that driveway at her own expense, but the Grays declined and instead decided to become trespassers. They cut across their pasture and started using plaintiff Yowell's driveway. In opening access to this driveway, the Grays allowed their livestock to roam more freely onto plaintiff Yowell's property than ever before.





16.    Roughly nine months ago, plaintiff Yowell called the Hinds County
Sheriff's office and tried to file a trespassing complaint against the Grays for using
her driveway without permission. She was told that a lawsuit over an easement had
been filed and that the Sheriff's office would not intervene while a lawsuit was
pending. This turned out to be a complete fabrication. Plaintiff Yowell patiently
waited to receive summons for a lawsuit, but none came because no lawsuit was ever
filed. Nor would any such lawsuit ever have been filed, at least by a competent

attorney, for such a lawsuit would have been frivolous. Two title searches were performed upon plaintiff Yowell's farmland: one shortly before she contracted with the USDA to become a teaching farm in March of 2022 by her attorney Greg Giddens, Esq., and another in March of 2023 by Charles Davis of Davis Land Surveying & Engineering of Raymond, Mississippi who performed a survey, see Exhibit 2. Both title searches confirmed that plaintiff Yowell's property has no easements or incumbrances upon it. Moreover, title to the easement by way of adverse possession is not in issue. According to Miss. Code § 15–1–13 (2023) adverse possession generally vests in any person claiming to be the owner after ten (10) years, but the ten years of adverse possession must be *continuous*. As noted in paragraph 15 above, the Grays used their own driveway up until about nine months ago when their driveway washed out, and only then did they start using plaintiff Yowell's driveway. The Grays have no legal claim of easement upon plaintiff Yowell's property whatsoever.

17.     In the attempt to keep the neighbors' livestock from roaming upon her property and destroying her crops, plaintiff Yowell tried numerous times to place a fence or gate across her driveway, one foot inside her property line. The second gate was never locked, one need only to have opened and closed it to gain access. Nonetheless, the Grays called Sheriff's deputies and defendant Archie, and together they removed the fences or gates no less than three times. Here is a photo plaintiff

Hale took on or about February 22, 2023 of persons believed to be defendant Gray, defendant Archie, and an unknown Hinds County Sheriff's deputy removing and destroying another one of plaintiff Yowell's gates and tearing it off its hinges, which of course had the predictable effect of allowing more of the neighbor's livestock to pour onto her property.



18.     Defendant Archie has repeatedly threatened to arrest plaintiff Yowell and her employees, harassing her son Taylor (who lives on a nearby property) if she did not stop trying to place a protective gate across her driveway. Given defendant Archie's notorious history of domestic abuse,[1] and violent and aggressive behavior

---

[1] https://www.wlbt.com/2021/02/12/hinds–co–supervisor–arrested–domestic–violence–charge/. Defendant Archie's wife Niya Hopkins filed a criminal affidavit against him based on an incident that occurred January 23, 2021. Video from that day shows Archie putting Hopkins' clothes on the side of the road. He also allegedly took several inner doors of their dwelling off the hinges because she refused to share a bedroom with him.

towards fellow members of the Hind County Board of Supervisors,[2] plaintiff Yowell is understandably terrified that defendant Archie will act violently towards her and her son. She has been seeing a psychologist to cope with her fear and anxiety due to defendant Archie's ongoing pattern of harassment.

19.    Speaking of that pattern of harassment, on or about 12:20 PM of February 22, 2023, plaintiff Hale, then an employee and farmhand of plaintiff Yowell who lived at the property, was unlawfully arrested and intimidated, apparently at the behest of defendant Archie. Plaintiff Hale recorded a written statement of the incident shortly after it happened so her recollection would be fresh, see Exhibit 3. According to plaintiff Hale, a tall Black woman officer wearing a COVID–19 mask breached her front door and her bedroom door where she was having lunch, and, without knocking and without showing a warrant, compelled her to walk outside to the porch of the farmhouse. There she saw defendant Archie backed up by 8 to 10 people including several Hinds County officers, and several of the trespassing neighbors. Plaintiff Hale was then led around to the front door where defendant Archie introduced himself. He had taped documents to a front porch post and said that this was an easement that applied to plaintiff's property. He told plaintiff Hale to give these documents to "Donna" (plaintiff Donna Yowell), and to

---

[2]  https://www.wlbt.com/2021/09/30/david–archie–faces–multiple–charges–after–arrest–during–meeting/.
Video of this September 30, 2021 incident describes defendant Archie cursing, destroying public property, and intimidating Hinds County Board members. To get his violent rage under control, several police officers had to subdue him and carry him out in handcuffs.

tell her not to put up any more gates across her driveway. Plaintiff Hale quit her job soon afterwards due to the traumatic stress of this incident. She was afraid that had she shown any resistance to this display of police intimidation and harassment that she could have been beaten up or killed for resisting arrest. According to plaintiff Hale, the photo on the next page was taken by her shortly after her false arrest. The photo shows four unknown Hinds County officers who participated in the arrest, all of whom appear to be armed, and the circled woman is the officer who compelled her to leave her bedroom.



20.     Upon learning of the February 22, 2023 incident, the undersigned plaintiff's counsel emailed a letter to Tony Gaylor, Esq., attorney for the Hinds County Board of Supervisors, informing him that I represent Ms. Yowell and that any and all future communication with my client should come through me in order to avoid any further breaches of the peace, see Exhibit 4. I informed Mr. Gaylor that I looked at the purported easement Mr. Archie forced upon Ms. Hale and that I doubted very much it applied to Ms. Yowell's property because it was the wrong address. I asked him to investigate this easement very carefully and, if he found it did not apply to Ms. Yowell's property, to please direct Mr. Archie and other Hinds County governmental officials to stop trying to enforce it. My request went ignored. The very next day the Grays—apparently emboldened by defendant Archie's display of paramilitary force and intimidation—brazenly erected a permanently grounded brick mailbox directly in front of plaintiff's private driveway.



21.    Plaintiff Yowell immediately forwarded PDF copies of this purported easement to Davis Land Surveying & Engineering of Raymond, Mississippi, see Exhibit 5. Within a day or two, they produced a digital drawing showing where this easement was located relative to her property, see Exhibit 6. It is not even close. No portion of this easement touches plaintiff Yowell's property, it falls well over 300 yards South of it. Note: although Charles Davis, of Davis Land Surveying & Engineering, performed an industry standard field survey upon plaintiff's property, he was unable to perform a field survey of this purported easement because he could not do so without trespassing upon another landowner. Mr. Davis can, however, demonstrate to the Court that this easement does not run anywhere near plaintiff Yowell's property by means of his expert testimony.

22.    Upon obtaining a digital copy of the Charles Davis map showing defendant Archie's bogus easement was in fact bogus, the undersigned plaintiff's counsel forwarded a copy to Tony Gaylor, Esq., attorney for the Hind County Board of Supervisors. I asked if Ms. Yowell could restore the gate across her driveway until we could resolve this matter as she was still having problems with the neighbors' cows roaming onto her property. Remarkably, Gaylor emailed me the next day that the Grays (the trespassing neighboring family) did not want the gate restored and that Hinds County Board of Supervisors would stand behind their decision, Exhibit 7. In fact, a recent Hinds County Board meeting agenda show that defendant Archie

has been trying to persuade the Board to gravel plaintiff's private driveway and designate it a public road, see Exhibit 8.[3] Defendant Archie seems hellbent on stealing plaintiff's property and ruining her farm by any and all illegal means at his disposal. **ADDENDUM:** I emailed attorney for the Board of Supervisors Tony Gaylor on Friday May 19, 2023 that I would commence litigation next Monday morning. Shockingly, at 9:00 AM that Monday morning plaintiff Yowell called to tell me that county workmen were paving her private driveway as we spoke, and that Hinds County Sheriff's cars were there in great force to compel the unwarranted paving, see photo next page. I informed my client to tell the workmen they were paving her private driveway without permission, and one of her farmhands did as I instructed. I later emailed attorney Gaylor that if defendant Archie had wanted to use Hinds County funds and equipment to illegally pave a private driveway, it would have made a lot more sense to have paved the neighbors' driveway to the East of plaintiff Yowell's property. As mentioned in paragraph 15, the neighbors did not start trespassing upon plaintiff Yowell until their own driveway washed out and they refused her kind offer to pay to repair it. Pave that driveway six months ago and we would not be embroiled in this litigation.

---

[3] See item A. on page 2, the first item scheduled for discussion by defendant Archie. He scheduled the graveling of Jones Court for discussion with the Board on April 17, 2023. "Jones Court" is what defendant Archie is now calling the plaintiff's private driveway. The previous driveway that serviced the neighbors' property was named Thomas Cox Road. That road name has been removed from the Hinds County GPS maps of the area, apparently in an attempt to manipulate Jones Court into becoming a public access road.



23.    More information has come to light about the forced paving incident that began Monday May 22, 2023. The cultivation of plaintiff Yowell's private driveway as a public road is apparently still underway. On that Monday morning, Taylor Yowell, plaintiff Yowell's son, was told by one of the county workmen that

they were there to "pave" a "public road." Although plaintiff Yowell's driveway is currently only graveled at this point, the graveling appears to be the first step in paving it. During a Temporary Restraining Order hearing scheduled Wednesday May 24, 2023 at the Hinds County Chancery Court building, in the chambers of the Honorable Judge Crystal Martin Wise, counsel for the Hinds County Board of Supervisors told the undersigned plaintiff's counsel that the cultivation of plaintiff Yowell's private driveway as a public road was being done pursuant to a "Board resolution"; that plaintiff Yowell's private driveway has "always" been a public road; that the property the neighboring Grays are occupying is "land locked"; and that it was necessary to secure access to the neighboring property for fire and safety reasons.

24.     First, plaintiff Yowell objects to any Board meetings held concerning her property without written notice to her attorney because undersigned counsel specifically instructed Tony Gaylor, Esq., attorney for the Hinds County Board of Supervisors, that all further communication regarding her property should come through me, Exhibit 4. Plaintiff Yowell alleges that any Board meetings concerning her property without written notice to her attorney violate her procedural and substantive due process rights and are illegal. Second, plaintiff Yowell asserts that the other factual allegations made by counsel for the Board at the TRO hearing (that her driveway was always a public road, that the neighbors are land locked, and that

a public road is necessary for fire and safety reasons) are highly disputable and in many cases demonstrably false.

25.     Plaintiffs' criticisms of the Board's assertions in paragraph 24 are based upon the following evidence.

a.     Here is a photograph of a "Private Driveway, No Trespassing" sign that, upon information and belief, was recently removed from plaintiff Yowell's driveway by one of the defendants. This photo was taken on or about June 15, 2021, and still shows the sign that was removed.



The removal of the sign implies that plaintiff Yowell's private driveway is now a public road accessible by the general public. This goes well beyond the bogus easement defendants have repeatedly tried to force upon plaintiff Yowell. It is one

thing to force her to allow the neighbors access to her property, but the defendants have now doubled down on that error and are trying to force her to allow everyone onto her property.

      c.     The photo below was taken on or about May 31, 2023, the day after plaintiffs filed their second amended complaint, docket entry #8. The reason this is significant is because this is a perfect example of how the defendants have repeatedly tried to correct or cover up their wrongdoings once it was brought to their attention by plaintiffs' pleadings and motions.



Upon information and belief, one of the defendants nailed Posted signs to the trees along plaintiff Yowell's driveway in response to plaintiffs' second amended complaint, apparently attempting to walk back Hinds County's recent eminent domain activities and restore the status of plaintiff Yowell's driveway as private driveway plaintiffs pled in their second amended complaint. So, which is it: Is plaintiff Yowell's private driveway really a public road now? Or is it an illegitimate easement masquerading as a public road, a "public road" that only the Grays can use? The defendants' attempts to cover up their wrongdoing are getting downright laughable.

d.      The name "Jones Court," is apparently what the Hinds County Board started calling plaintiff Yowell's private driveway when they undertook to gravel or pave it without her knowledge or consent as shown in Exhibit 8. Plaintiff Yowell had no way of knowing that the Board began calling her driveway "Jones Court." She would not have known that Board hearings on "Jones Court" applied to her property even if the notice of the hearings had been nailed to her front door and sent by certified mail to her lawyer (neither of which happened, these hyperbolic hypotheticals are presented to make a point).

e.      Upon information and belief, it appears that the Hinds County Board of Supervisors has been deliberately manipulating street names in order to cover up its wrongdoing. Note the two names "Jones Court" forking off from Frank Hall Road

in the Hinds County CMPDD planning maps shown below. This photo was taken on or about May 28, 2023.



The Maps application by Apple shows that Thomas Cox Road, not Jones Court, forks off Frank Hall Road, and it shows no road extending through plaintiff Yowell's

property at all. This is probably because the Apple maps are based upon older information. This Maps screenshot was taken on or about May 28, 2023.



Taylor Yowell has prepared this Google map with labels to show how the digital street names have recently been manipulated by defendants in their attempts make plaintiff Yowell's private driveway into a public road. This Google map was prepared on or about May 28, 2023.



This recent manipulation of digital street names will surely be borne out by physical, historical maps. Note this photograph below taken by Taylor Yowell shows that the street sign "Thomas Cox Road" currently marks a street that Hinds County is now naming "Jones Court" on its digital maps. This photo was taken in Taylor Yowell's driveway on or about May 26, 2023, and it shows Frank Hall Road running East and West.



     f.     As to the claim that the neighbors are land locked: no, they really are

not. Upon information and belief, plaintiffs believe that the neighbors have an access

driveway on the Southern border of their property. And they also have the driveway

mentioned in paragraph 15. It lies about 100 yards East of plaintiff Yowell's

driveway, and it connects to Frank Hall Road. The side–by–side photos of this

driveway were taken on or about July 2020 when the neighbors were still using it

and on or about July 2022 when they had stopped using it.



Note that the driveway looks roughly as traversable in each photo, but it obviously has fallen into disrepair and grown up because the neighbors stopped using it. Plaintiff Yowell approached a road expert and asked what it would take to restore the road to good working condition. She was told it would take several loads of gravel and cost about $3,000. She offered to repair the road for the neighbors at her own expense, but they refused and chose to trespass upon her property instead.

g.    Notably, the neighbors used the Northern driveway for receiving mail, putting out their garbage for collection, and for the children to meet the school bus. These side–by–side photos, taken on or about June 15, 2021, demonstrate that the driveway was then used for all three purposes.



These photographs are substantial proof that the neighbors were not adversely possessing plaintiff Yowell's driveway during this time, hence they will be hard pressed to show continuous adverse possession over the last ten years.

h.      Google Earth satellite photos from 2020 show several roadbeds on the neighbors' property that connected to this driveway, and none that connected from plaintiff Yowell's property. This screenshot was taken on or about May 28, 2023.



The point is, if the Board of Hinds County's genuine concern was to give the neighbors better fire and safety access as economically as possible, they should have repaved *the neighbors' Northern driveway*—not try and create a wholly new and fictitious road by fashioning one out of plaintiff Yowell's private driveway. In their haste to cover up their wrongdoing with the bogus easement, the governmental defendants have heaped more wrongdoing upon wrongdoing.

26.    Prior to the forced paving incident, an incident at the farm occurred on or about 9:00 PM on May 18, 2023. Plaintiff Yowell was spending the night in a small cottage on the farm. Evidently plaintiff Yowell parked her golf car in her private driveway in such a manner that the neighbors thought it obstructed the easement privileges defendant Archie has wrongfully convinced them to believe they have. The undersigned plaintiff's counsel received a phone call from plaintiff

Yowell saying that she heard the neighbors screaming and that Sheriff's deputies were knocking at her door. I instructed her not to answer the door to the police unless they produced a warrant. I did this because I had previously instructed Tony Gaylor, Esq., attorney for the Hinds County Board of Supervisors, that I wanted all further communication with my client to come through me in order to avoid future breaches of the peace, Exhibit 4. Ms. Yowell is nearly a 70 year–old woman. My concern is that she could be beaten up or killed for resisting arrest, which was also plaintiff Hale's concern during her unlawful arrest incident. Plaintiff Yowell's son Taylor soon arrived, pushed the golf cart out of the way, and the incident was resolved. Notably, he said that one the neighbors was clutching a handful of papers and said that the driveway was now a "public road." The next day, undersigned counsel emailed Tony Gaylor about this incident. I asked if he could confirm or deny whether defendant Archie and the Hinds County Board had taken steps to declare plaintiff Yowell's driveway a public road. He replied that he knew of no further action taken by the Board, Exhibit 9. Nonetheless, this incident showed the favoritism that defendant Archie and the other named defendants have shown the neighbors is still running full throttle, despite my repeated pleading with attorney Gaylor to put a stop to this nonsense. Defendant Archie has been encouraging the Grays to believe they have easement rights, and that the Hind County Sheriff's office is completely on their side and will come swooping in to protect their easement rights whenever they

call. Plaintiff Yowell reminds the Court that when she tried to call the Hinds County Sheriff's office to report the neighbors' trespassing they refused to book the complaint and would not lift a finger to help her.

27.    Plaintiffs point out that they never should have been forced to litigate this matter in order to bring the government's wrongdoing to the surface and stop their harassment. Plaintiffs bring an important procedural issue into focus. Namely, according to Miss. Code § 11–17–29 (Rev. 2004), to  remove clouds on title for a piece of real property the claimant must either possess the property or the property must be unoccupied. See also *Dixon v. Parker*, 831 So. 2d 1202, 1204 (¶8) (Miss. Ct. App. 2002). Rental tenants do not have standing to bring a lawsuit to quiet title in Mississippi (for an easement or otherwise) because they do not possess the title for the property on which they reside; the owner/landlord does. Disinterested Board of Supervisor members and county law enforcement officers *certainly* do not have standing. The point is, if defendant Archie had not tried to usurp the authority of the Chancery Court; had he not entertained an ex parte hearing with the Grays and then tried to enforce his own incompetent and illegal ruling through law enforcement officers who should have known better than to follow all his dictates; had he advised the Grays to ask their landlord to hire a competent lawyer; and if attorney for the Board of Supervisors Tony Gaylor had advised defendant Archie to cease and desist his illegal efforts to enforce this bogus easement, it would not have been necessary

for plaintiff to hire an attorney and file this lawsuit. If at any point in this dispute a competent attorney had been approached in order to enforce the purported easement properly, by filing a complaint to quiet title with the Chancery Court as they should have, she or he would have researched the easement and found that it did not apply, and no attorney in their right mind would file a frivolous lawsuit. Then this attempted public road fiasco heaped malicious error upon error. The defendants have acted have so blindly in support of the trespassing neighbors, and they have discriminated against plaintiffs so egregiously, that do not have the slightest clue how outrageously illegal their actions have been.

VIOLATIONS

COUNT ONE

The damages sought in Count One apply only to the governmental defendants: to defendant Hinds County, defendant Archie, and the unknown Sheriff's officer defendants.

28.     The Fourth Amendment of the United States Constitution states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This language is known as the Search and Seizure Clause. Defendants have repeatedly

violated the Fourth Amendment rights of both plaintiffs. Plaintiff Hale was falsely arrested without proper cause or warrant, and plaintiff Yowell's fences, gates, signs, and other attempts to protect her private property were repeatedly removed and destroyed without proper cause or warrant.

29.    The Fifth Amendment states in relevant part: "nor shall private property be taken for public use without just compensation." This language is known as the Takings Clause. The defendants' actions could potentially ruin plaintiff Yowell's farm as a teaching farm, which was her purpose for acquiring this land. If plaintiff Yowell loses her farm as a teaching farm, defendants are liable under the Takings Clause.

30.    The Fifth and Fourteenth Amendments contain identical language that states: "[N]o person shall be deprived of life, liberty or property without due process of law." This language has been called the Due Process Clause. Defendants have repeatedly denied Plaintiff Yowell her due process rights, both in the attempt to wrongfully claim her private driveway under a fraudulent easement, and in the attempt to wrongfully claim her private driveway as a public road in order to coverup the fraudulent easement.

31.    The Fourteenth Amendment of the U.S. Constitution states in relevant part: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." This language is known as the Equal Protection Clause. It mandates

that state and local governments treat all similarly situated persons alike, and it broadly restricts offensive discrimination against any individual or group. Defendants have repeatedly violated the Equal Protection rights of both plaintiffs.

32.    Plaintiff argues that the violation of their equal rights should be judged with strict scrutiny, the highest level of scrutiny applied in civil rights lawsuits such as these. Strict scrutiny is applied to the government's disparate treatment based either on 1) the fact that plaintiffs belong to a suspect classification, or 2) the fact that the government has infringed on the exercise of plaintiffs' fundamental rights. Both are present in the case at bar. A prima facia case of racial discrimination is shown in that both plaintiffs are White; whereas defendant Archie, the entire Hinds County Board of Supervisors, all of the Hinds County Sheriff's deputies or constables that have been harassing plaintiffs, and the Grays (the neighboring trespassers) are all Black. Both plaintiffs are also women which presents a prima fascia case of gender discrimination. Plaintiffs' fundamental rights are the rights to enjoy their private property and means of making a living without governmental interference, and the freedom from unlawful arrests and police harassment.

33.    Alternatively, plaintiffs argue that even if their claim is viewed as a "claim–of–one," the government's actions lack any rational basis. In fact, the leading precedent of a claim–of–one violation of Equal Protection was a case where a municipal government demanded a larger easement from one landowner than they

did the others. See *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). The Equal Protection Clause demands that the government be neutral between competing landowners and not take unfair and arbitrary sides.

COUNT TWO

The damages sought in Count Two only apply to the non–governmental defendants: to defendants Gray, Weathersby, and Hill. However, relief against the governmental defendants for these damages may later be sought by amended complaint, pending exhaustion of remedies under the Mississippi Tort Claims Act, Miss. Code § 11–17–29 (2013).

34.    The torts the defendants have committed against plaintiffs are almost too many to list: trespass, trespass to chattels, conversion, destruction of private property, tortious interference with a business or contractual relationship, intentional infliction of emotional distress; these are just a handful of the torts that the facts of the case at bar will show. All non–governmental defendants are liable.

RELIEF

33.    Wherefore, the plaintiffs demand a trial by jury, and upon a verdict in their favor, ask that compensatory damages be assessed in an appropriate amount, as well as punitive damages for those claims for which they are available by law, and that they be awarded costs, attorney's fees, and all other relief to which they are entitled.

Respectfully Submitted, this the 6th day of June  2023.


/s/ Marvin Vining
MARVIN VINING

Marvin Vining, Esq.
MS Bar No. 8535
Lead counsel for plaintiffs


**MARVIN VINING**
Attorney at Law, LLC
P.O. Box 250
Monticello, MS 39654
Phone: 601–842–2589
marvinvining@mac.com

CERTIFICATE OF SERVICE

I, Marvin Vining, lead counsel for plaintiffs, certify that I have this date served a copy of the above and foregoing Proposed Third Amended Complaint to the following interested persons by way of the ECF electronic filing system and by courtesy emails.

| | |
|---|---|
| Honorable Tom S. Lee | Judge assigned this case |
| Honorable Michael T. Parker | Magistrate assigned this case |
| Rayford G. Chambers, Esq.<br>rchambers@cglawpartners.com | Lead attorney for Hinds County Board of Supervisors and for Supervisor David L. Archie |
| John Hall, Esq.<br>jhall@halllawgrp.com | Lead attorney for Sheriff Tyree D. Jones and the defendants currently named as Unknown Sheriff's Deputies and Constables |

This, the 6th day of June 2023.


/s/ Marvin Vining
MARVIN VINING



**MARVIN VINING**
Attorney at Law, LLC
P.O. Box 250
Monticello, MS 39654
Phone: 601–842–2589
marvinvining@mac.com

37